ENVIRONMENTAL DEFENSE FUND, INC. and Citizens For a Better Environment, Plaintiffs,

v.

CITY OF CHICAGO and Richard M. Daley, Mayor of the City of Chicago,[1] Defendants.

No. 88 C 769.

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1989.

---

**1.** Pursuant to Fed.R.Civ.P. 25(d) Richard M. Daley is substituted as a defendant in this action. He succeeds Eugene Sawyer as Mayor of the City of Chicago.

Karen Florini and Kathy Stein, Environmental Defense Fund, Washington, D.C. and Leslie Ann Jones, Northwestern Univ. Legal Clinic, Chicago, Ill., for plaintiffs.

Louis M. Rundio, Jr. and Robert J. Shobig, McDermott, Will & Emery, Chicago, Ill., amicus curiae for the Institute of Resource Recovery.

Nancy Marren, Phillip Snelling, and Henry Henderson, Asst. Corporate Counsel, and Judson H. Miner, Corporate Counsel, City of Chicago Law Dept., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs Environmental Defense Fund, Inc. (EDF) and Citizens for a Better Environment (CBE) bring this action against the City of Chicago and its Mayor, seeking injunctive relief and civil penalties under Section 7002 of the Resource Conservation and Recovery Act (RCRA). Plaintiffs allege that the City has violated certain provisions of RCRA, 42 U.S.C. § 6901 *et seq.*, by generating hazardous waste and not complying with the hazardous waste requirements under RCRA, subtitle C. 42 U.S.C. §§ 6921–6939b. We have before us plaintiffs' and defendants' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, both motions are denied and plaintiffs are granted leave for additional discovery.

## FACTS

The City is the owner and operator of a facility known as the Chicago Northwest Incinerator, located at 700 N. Kilbourn Avenue in Chicago. This was one of the first modern waste-to-energy resource recovery facilities in the United States and is the only such facility in Illinois (aff. of John Ellis, plant manager, Dept. of Streets and Sanitation, Chicago, at ¶ 3). Resource recovery facilities use highly engineered and controlled incineration technology to process solid wastes, reducing their volume and recovering usable energy in the form of steam or electricity (aff. of Mosi Kitwana, Deputy Commissioner of Sanitation, Chicago, at ¶ 10). The Northwest facility receives 200 to 250 truckloads of refuse each weekday and processes some 350,000 tons of solid municipal waste annually (Ellis aff. ¶ 7). According to Mr. Kitwana, at least 99% of the waste received at the facility consists of household waste (Kitwana aff. ¶ 14). The remainder of the waste consists of commercial waste—primarily paper and foodstuffs brought into the United States by international flights arriving at O'Hare Airport—and small quantities of contraband seized by law enforcement officials (Kitwana aff. ¶ 14). The City contends that this waste, and the small amounts of commercial waste collected in Chicago, do not contain hazardous materials.

The facility is supposed to maintain rigid inspection procedures. Household waste shipments are allegedly spot-checked to ensure that they do not contain hazardous wastes and commercial shipments carefully screened—all to prevent the acceptance of hazardous wastes (Kitwana aff. ¶ 15). Commercial waste shipments must also be approved by the Bureau of Sanitation prior to acceptance. Finally, all commercial waste is supposed to be physically examined and any hazardous materials found are to be sent back to the generator for proper disposal (Kitwana aff. ¶ 15).

Once the waste has been delivered, and inspected for hazardous materials, it is processed through the facility and reduced to an ash residue. The status of this ash is what is at issue in this matter. Plaintiffs

allege that the ash is hazardous waste [2] and that the City has failed to comply with the cradle-to-grave regulatory system that governs storage, transport, disposal, and other handling of hazardous wastes. *See* 42 U.S.C. §§ 6921 *et seq;* 40 CFR §§ 262.10 *et seq.*

The City contends that the ash remaining after incineration at the Northwest facility is from a non-hazardous waste stream and thus exempt from hazardous waste regulations. It moves for summary judgment alleging that there are no genuine issues of material fact in dispute, and that 42 U.S.C. § 6921(i) and 49 CFR § 261.4(b)(1) specifically exclude all waste management activities of resource recovery facilities that receive household waste and non-hazardous commercial waste. On cross-motion, plaintiffs contend that the generation of toxic ash is not exempt from hazardous waste regulation and that only certain activities of resource recovery facilities are exempt.

## DISCUSSION

■ The central issue in this action is whether the ash residue remaining after incineration is a hazardous waste under subtitle C, or only a solid waste regulated under subtitle D. Statutory ambiguity has caused a great deal of uncertainty with respect to how this ash should be regulated. Plaintiffs contend that toxic ash generated by resource recovery facilities is hazardous and subject to hazardous waste regulation. Defendants, on the other hand, contend that ash remaining after the incineration of household and non-hazardous commercial waste is exempt from subtitle C regulation. We agree.

The Resource Conservation and Recovery Act was enacted by Congress to address our growing national solid waste crisis, to promote the protection of health and the environment, and to conserve valuable material and energy resources. 42 U.S.C. § 6902. The RCRA classifies wastes as either hazardous (regulated under C, 42 U.S.C. §§ 6921–6939b) or as non-hazardous

(regulated under D, 42 U.S.C. §§ 6941–6949a). Subtitle C imposes rigorous safeguards and procedures on hazardous waste management, while D essentially forbids the disposal of solid waste in open dumps and provides significantly less regulation than C. When Congress first enacted the RCRA in 1976 it did not initially identify which wastes were subject to hazardous waste regulation. Rather, it required the EPA to develop and promulgate criteria for identifying hazardous wastes. 42 U.S.C. § 6921(a). In 1980 the EPA issued regulations identifying and listing hazardous wastes. Included in these regulations was a provision known as the "household waste exclusion." 45 Fed.Reg. 33,120 (May 19, 1980). That provision exempted the entire household waste stream, including the ash residue from household waste, from hazardous waste regulation and provided, in pertinent part, as follows:

> § 261.4  EXCLUSIONS
>
> (b) *Solid wastes which are not hazardous wastes.* The following solid wastes are not hazardous wastes:
>
> (1) Household waste, including household waste that has been collected, transported, stored, treated, disposed, recovered (*e.g.,* refuse-derived fuel) or reused. "Household waste" means any waste material (including garbage, trash and sanitary wastes in septic tanks) derived from households (including single and multiple residences, hotels and motels.)

45 Fed.Reg. 33,120 (May 19, 1980) (codified as amended at 40 CFR § 261.4(b)(1) (1987)).

In the preamble to these regulations the EPA restated its view that ash from the incineration of household waste should be excluded from hazardous waste regulation, stating:

> The Senate language makes clear that household waste does not lose the exclusion simply because it has been collected. Since household waste is excluded in all phases of its management, *residues remaining after treatment (e.g., incinera-*

**2.** Plaintiffs contend that 32 samples of ash generated at the Northwest Facility have been tested for toxicity pursuant to the EP toxicity test.

Of those samples, 29 have exhibited levels of lead and/or cadmium that exceed the level qualifying it as hazardous waste (pl. cplt. ¶ 15).

*tion, thermal treatment) are not subject to regulation as a hazardous waste.* Such wastes, however, must be transported, stored, treated and ~~disposed in~~ accord with the applicable state and federal requirements concerning the management of solid waste. . . .

45 Fed.Reg. 33,098 (May 19, 1980) (emphasis added). When Congress amended the RCRA in 1984 to clarify the household waste exclusion, it left unmodified the EPA's 1980 interpretation that ash from the incineration of household waste should be excluded from hazardous waste regulation. 42 U.S.C. § 6921(i). Additionally, Congress expanded this exclusion to include resource recovery facilities that also burn non-hazardous commercial or industrial solid waste. The statute currently reads:

(i) *Clarification of Household Waste Exclusion*

A resource recovery facility recovering energy from the mass burning of municipal solid waste shall not be deemed to be treating, storing, disposing of, or otherwise managing hazardous wastes for the purpose of regulation under this subchapter, if—

(1) such facility—

(A) receives and burns only—

(i) household waste (from single and multiple dwellings, hotels, motels and other residential sources), and

(ii) solid waste from commercial or industrial sources that does not contain hazardous waste identified or listed under this section, and

(B) does not accept hazardous wastes identified or listed under this section, and

(2) the owner or operator of such facility has established contractual requirements or other appropriate notification or inspection procedures to assure that hazardous wastes are not received at or burned in such facility.

42 U.S.C. § 6921(i) (1984).

The fact that Congress amended the RCRA without directly renouncing the EPA's 1980 interpretation that ash from household waste is excluded from hazard-ous waste regulation is significant. "Congressional failure to revise or repeal [an] agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Young v. Community Nutrition Institute,* 476 U.S. 974, 983, 106 S.Ct. 2360, 2365–66, 90 L.Ed.2d 959 (1986) (quoting *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), *rev'd on other grounds, NLRB v. Hendricks County Rural Electric Membership Corp.,* 454 U.S. 170, 102 S.Ct. 216, 70 L.Ed.2d 323 (1981)). Congress having left untouched the EPA's 1980 interpretation is persuasive evidence that it intended to exclude ash such as this from subtitle C regulation.

Plaintiffs argue, however, that Congress did not intend the household waste exclusion to apply to generators of hazardous wastes such as defendants. According to plaintiffs, the 1984 amendment exempts only certain activities of resource recovery facilities (namely the treating, storing, disposing of or otherwise managing certain specified wastes) and does not exclude the generation of hazardous waste. Indeed, the current RCRA statute contains no language indicating that waste such as ash, generated by resource recovery facilities, should be excluded from hazardous waste regulation. Therefore, plaintiffs' claim that defendants must comply with the RCRA's hazardous waste requirements because the ash defendants are generating is hazardous. We find this reasoning unpersuasive.

When Congress amended the RCRA and clarified the household waste exclusion, it meant to exclude all of the waste management activities of a resource recovery facility from subtitle C regulation. This interpretation is consistent with the RCRA's stated policy goal of encouraging commercially-viable resource recovery facilities and removing impediments which may hinder their development and operation. The Senate Report which accompanied the 1984 RCRA amendments supports this reading and, in fact, defines the waste management activities of a resource recovery facility to

include generation. The report provides that

> [a]ll waste management activities of [resource recovery facilities,] including the *generation*, transportation, treatment, storage and disposal of waste shall be covered by the exclusion....

S.Rep. No. 284, 98th Cong., 1st Sess. 61 (1983) (emphasis added).

That the EPA 1980 household waste exclusion does not include the words "generation" or "ash," but nevertheless excludes the generation of ash from hazardous waste regulation, provides further support that Congress meant to exclude ash generated from household waste from subtitle C. *See* 45 Fed.Reg. 33,120 (May 19, 1980). Plaintiffs do not dispute that the EPA initially interpreted the household waste exclusion as excluding all of the waste management activities of municipal incinerators accepting only household wastes. In fact, plaintiffs concede that the 1980 household waste exclusion was a "waste stream" exclusion (pl. mem. at 20). Nonetheless, plaintiffs contend that the 1984 RCRA statute does not pertain to the entire waste stream but, rather, is limited to a class of resource recovery facilities that must meet certain requirements. We disagree. Because the original household waste exclusion covered the management of ash residue, and the 1984 clarification left untouched this interpretation, we conclude that Congress must have meant to adopt the EPA's position. Had Congress intended to change this interpretation, it would have so indicated in the 1984 amendment.

The United States Conference of Mayors and the National Resource Association have filed an amicus brief in support of the City's position and the Institute of Resource Recovery has done likewise.[3] They claim that landfill capacity for hazardous wastes is limited, is being rapidly depleted and is not being replaced, and that a requirement that ash be disposed of as a hazardous waste would imperil the entire resource recovery program. Plaintiffs dispute that gloomy assessment. Whether that assessment is true or not, we are not persuaded that Congress changed obligations by implication and without specifically addressing and rejecting those concerns.

Since the 1984 amendment, the EPA has issued new regulations interpreting the household waste clarification provision. 40 CFR 261.4(b)(1) (1985). Plaintiffs argue that these regulations provide further support that Congress did not intend to exclude the generation of ash from hazardous waste regulations. In the preamble to these regulations, the EPA seemed to believe that the 1984 statute modified the earlier policy on ash. The EPA stated that it did not see the 1984 amendments as an attempt to exempt the regulation of ash residue.[4] *See* 50 Fed.Reg. 28,726 (1985). Recent statements from some EPA officials, following the issuance of the 1985 regulations, have also indicated that the EPA does not consider ash to be exempt from hazardous waste regulation. *See* Testimony of Sylvia Lowrance, Director,

---

**3.** We here grant their motions to file those briefs.

**4.** The EPA interpreted the clarification as follows:

> The statute is silent as to whether hazardous residues from burning combined household and non-household, non-hazardous waste are hazardous waste. These residues would be hazardous wastes under present EPA regulations if they exhibited a characteristic. The legislative history does not directly address this question although the Senate report can be read as enunciating a general policy of non-regulation of those resource recovery facilities if they carefully scrutinize their incoming wastes. On the other hand, residues from burning could, in theory, exhibit a character-

istic of hazardous waste even if no hazardous wastes are burned, for example, if toxic metal become concentrated in the ash. Thus, the requirement of scrutiny of incoming wastes could not assure non-hazardousness of the residue. EPA believes that the principal purpose of section 3001(g) [sic] was to prevent resource recovery facilities that may inadvertently burn hazardous waste, despite good faith efforts to avoid such a result from becoming subject to the Subtitle C regulations. EPA does not see in this provision an intent to exempt the regulation of incinerator ash from the burning of non-hazardous waste in resource recovery facilities if the ash routinely exhibits a characteristic of hazardous waste. 50 Fed.Reg. 28,725–26 (7/15/85).

Office of Solid Waste, EPA, at *Regulation of Municipal Solid Waste Incinerators: Hearing Before the Subcommittee on Transportation and Hazardous Materials of the House Committee on Energy and Commerce*, 101st Congress, 1st Session (May 11, 1989).

Other EPA officials who have examined the 1985 interpretation have concluded that that interpretation, however, may have been in error. On December 3, 1987, J. Winston Porter, assistant administrator for Solid Waste and Emergency Response, testified before the Senate Committee on Environment and Public Works and stated that

> [t]he Agency has reexamined that [1985] interpretation and now concludes that it may have been in error. The Agency believes that the language and legislative history of Section 3001(i) [42 U.S.C. § 6921(i)] were probably intended to exclude these ash resides from regulation under Subtitle C.

It seems clear that Congress' interest in Section 3001(i) was to encourage energy recovery. Under the section, the reach of the household exclusion was to be extended for facilities that recover energy. The Agency's prior interpretation of the section would restrict the exclusion with respect to ash residue for facilities that recover energy as well as those that do not. This appears inconsistent with the reach of the household exclusion itself (which clearly covers ash). It also appears inconsistent with the expressed legislative intent that "[a]ll waste management activities of such a facility, including the generation, transportation, treatment, storage, and disposal of waste shall be covered by the exclusion...."

S.Rep. at 61.

In addition, after stating in the 1985 interpretation that it did not perceive the RCRA amendments as an attempt to exempt the regulation of ash residue, the EPA indicated its confusion on the matter by stating that it

> does not believe the HSWA [1984 Hazardous and Solid Waste Amendments] impose new regulatory burdens on resource recovery facilities that burn household and other non-hazardous waste, and the Agency has no plans to impose additional responsibilities on these facilities. Given the highly beneficial nature of resource recovery facilities, any future additional regulation of their residues would have to await consideration of the important technical and policy issues that would be posed in the event serious questions arise about the residues.

50 Fed.Reg. 28, 726 (1985).

As the agency primarily responsible for administering the RCRA, the EPA should be entitled to some deference in its interpretations regarding the regulation of ash residue. However, because the EPA'S classification of ash rests on a questionable reading of the statute and has been, at best, inconsistent, it should be given less weight than it would normally be accorded.[5] *See Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1986) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view"). For this reason, we find that the EPA'S 1985 interpretation—classifying ash from household and commercial waste as hazardous if it exhibits characteristics of toxicity—does not affect our decision.

Thus, contrary to plaintiffs' interpretation of RCRA, we conclude that ash remaining after the incineration of household waste and non-hazardous commercial waste is exempt from regulation if the resource recovery facility satisfies the criteria of § 3001(i).

---

**5.** Even if the EPA's 1985 interpretation was entitled to deference in these proceedings, it would not be binding on this court. "Interpretative rules are statements as to what the administrative officer thinks the statute or regulation means, whereas legislative rules have effects *completely independent* of the statute." *United Technologies Corp. v. United States Environmental Agency*, 821 F.2d 714, 718 (D.C.Cir.1987) (citations omitted) (emphasis in original).

Defendants insist that the Chicago Northwest Incinerator does meet those criteria and have submitted affidavits to the effect that virtually all the waste received and burned is household waste, that the very limited commercial and industrial waste processed does not contain hazardous wastes, that the facility does not accept hazardous wastes and that appropriate procedures are in place to assure that hazardous wastes are not received at or burned in the facility. Plaintiffs dispute those conclusions but they can, for now, point to little other than the toxicity tests to support their disagreement. Until now the focus of this lawsuit has been the statutory interpretation issue. Plaintiffs have lost on that issue. They are not foreclosed, however, from conducting reasonable discovery to test the defendants' affidavit assertions. Rule 56(f) so permits. Until they have had an opportunity to do so, we cannot conclude that defendants, beyond reasonable dispute, have complied with the conditions needed to exempt resource recovery facilities from hazardous waste regulation when burning household and commercial waste. Although defendants maintain that the incinerator does not accept hazardous wastes, and that they have established sufficient notification and inspection procedures to prevent this, these issues must be regarded as disputed issues of material fact that preclude the award of summary judgment.

## CONCLUSION

For the foregoing reasons, both plaintiffs' and defendants' cross-motions for summary judgment are denied; plaintiffs are granted leave for additional discovery.